IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SCOTT GREENBLATT and TAMMY GREENBLATT, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Civil Action No. 1:17-cv-669 |
| VET COMP & PEN MEDICAL CONSULTING, LLC, | ) ) ) |
| Defendant. | ) ) |

**VERIFIED COMPLAINT**

NOW COME the plaintiffs, Lieutenant Colonel Scott Greenblatt (Ret.) and his wife Tammy Greenblatt, by and through counsel, and ask the Court to enter a declaratory judgment that the non-competition and non-solicitation clauses that Defendant Vet Comp & Pen Medical Consulting, LLC ("Vet Comp") has threatened to enforce against them are invalid and unenforceable. The contracts containing these restrictive covenants are unsigned, are not supported by any consideration, and moreover the restrictive covenants contained therein would prevent the Greenblatts from providing assistance to any United States military veteran applying for disability benefits anywhere in the world for an excessive 20 year term. Further, these covenants do not protect any legitimate business interest of Vet Comp. Accordingly, the Court should declare that these covenants cannot be enforced against the Greenblatts.

**Parties, Jurisdiction, and Venue**

1. Plaintiff retired Lieutenant Colonel Scott Greenblatt is a citizen and resident of Pinehurst, Moore County, North Carolina. Prior to retiring from the United States Army, Col. Greenblatt was stationed at Fort Bragg, North Carolina.

2. Plaintiff Tammy Greenblatt is the wife of Col. Greenblatt and is a citizen and

resident of Pinehurst, Moore County, North Carolina.

3. Defendant Vet Comp is a Wyoming limited liability company with its principal place of business in Gainesville, Florida. Upon information and belief, all of the members of Vet Comp are Florida residents.

4. Jurisdiction is proper in this Court under 28 U.S.C. § 2201 over Plaintiffs' claim for a declaratory judgment, and under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Defendant Vet Comp is subject to personal jurisdiction in this Court because it has purposefully directed its business activities into this state and district, including by employing a recruiter in the Fort Bragg area, by soliciting business from numerous North Carolina veterans, by recruiting Col. Greenblatt to work for Vet Comp, and by soliciting Plaintiffs to enter into the Agreements that are the subject of this action.

6. Venue is proper in this district under 28 U.S.C. § 1391 because this is where a substantial part of the events or omissions giving rise to the claims occurred and because Defendant is subject to personal jurisdiction in this district.

## Facts

7. Col. Greenblatt is a distinguished veteran of the United States Army with more than 25 years of active duty military service, including eight combat deployments to Iraq, Kuwait, and other regions.

8. Col. Greenblatt has long been recognized for his knowledge of the Department of Veterans Affairs programs and his passion for supporting U.S. military veterans. Col. Greenblatt has demonstrated many years of selfless service in support of veterans service organizations in North Carolina and at the national level, including serving on the national board of the Jewish War

Veterans of the United States of America and serving as Vice President of the Military Officers Association (MOAA) in North Carolina. In August of 2014, while he was still on active duty with the United States Army, Col. Greenblatt was invited to meet with President Obama and Veterans Affairs Secretary Robert McDonald to discuss U.S. Military Veteran Care and its program development. Since leaving active duty and permanently settling in North Carolina, he has continued his veteran centric advocacy at the state level.

9.  In 2015, in preparation for retiring from the Army, Col. Greenblatt sought out consultations from medical consulting companies to review his medical records and assist him in applying for veterans disability benefits upon his separation from active duty military service. Col. Greenblatt was stationed at Fort Bragg, and lived in Pinehurst, North Carolina at that time.

10. In the course of that process, Col. Greenblatt met Gina Uribe, one of the founders of Vet Comp, which was at that time a small company, processing approximately 30 veteran disability claims per month.

11. Through his association with Ms. Uribe, Col. Greenblatt was introduced to the CEO of Vet Comp, James ("Jim") Hill. Mr. Hill took an interest in Col. Greenblatt and flew to North Carolina on his private plane twice in the fall of 2015 to recruit Col. Greenblatt to join Vet Comp.

12. At that time, Col. Greenblatt had plans to work in the Middle East following his retirement, but was persuaded by Mr. Hill to consider working for Vet Comp.

13. On or about November 18, 2015, Mr. Hill emailed the Greenblatts identical Independent Contractor Unilateral Non-Compete, Confidentiality and Non-Disclosure Agreements (the "Independent Contractor Agreement") and required that they execute them before discussing possible future employment with Vet Comp. True and accurate, but unsigned, copies of these Independent Contractor Agreements provided to Plaintiffs by Defendant are attached here to as Exhibits 1 & 2.

14. The following day, on or about November 19, 2015, Mr. Hill made his first recruiting trip to North Carolina. Mr. Hill few his private plane to the Moore County Regional Airport, where Col. Greenblatt met him drove him to Pinehurst Resort for their meeting.

15. At this meeting, the Greenblatts gave Mr. Hill executed copies of the Independent Contractor Agreement, but did not retain signed copies for themselves. The Greenblatts have never have been provided signed copies of the Independent Contractor Agreements.

16. Neither of the Greenblatts received any consideration for their execution of these agreements during their meeting with Mr. Hill, or at any time thereafter. After the Greenblatts executed these agreements, Mr. Hill only generally discussed the possibility of Col. Greenblatt potentially working for Vet Comp at some point in the future. He did not extend any offer of employment, provide any confidential information, or provide any other form of consideration in return for the execution of the Independent Contractor Agreements.

17. The Independent Contractor Agreement contains the following restrictive covenant, which is the subject of this action:

> The Independent Contractor warrants and guarantees that throughout the duration of this agreement, and for a period of 20 years following the culmination, completion or termination of this agreement, that the Independent Contractor shall not directly or indirectly engage in any business that would be considered similar in nature to Vet Comp & Pen Medical Consulting, LLC, its subsidiaries, or any current or former clients and or customers. Nor shall the Independent Contractor solicit any client, customer, officer, staff, contractor, or employee for the benefit of the Independent Contractor or any third party.

18. The first sentence of this clause is hereafter referred to as the Non-Competition Clause. The second sentence is referred to herein as the Non-Solicitation Clause.

19. The Independent Contractor Agreement provides that it is governed by the laws of the state of Florida without regard to its conflict of law provisions.

20. Approximately one month later, in December 2016, Mr. Hill solicited Col. Greenblatt to travel to Florida to interview with the other owners and officers of Vet Comp. At the

4

end of a three day interview process, Col. Greenblatt was orally offered a $100,000 salary and was promised the opportunity for an ownership interest in Vet Comp, both commencing upon his retirement from the U.S. Army. No additional written agreements were ever signed between Col. Greenblatt and Vet Comp.

21. Col. Greenblatt began working with Vet Comp in July 2016 and received his first compensation from the company that month.

22. Mrs. Greenblatt never worked for or received any compensation from Vet Comp.

23. During the time that Col. Greenblatt worked with Vet Comp, the company provided consulting services to veterans that were either making an initial application for disability benefits through the Veterans Administration or were seeking an increase in their benefits payments.

24. Thus, Vet Comp's business was exclusively designed around the Veterans Administration benefits system. This is a public system, and the applicable rules, regulations, processes, and forms are available on-line and at any Veterans Administration office.

25. During his time working with Vet Comp, Col. Greenblatt provided advice to Vet Comp's executives and other employees about navigating the Veterans Administration system, researched the applicable regulations and processes, and generally provided assistance regarding the Veterans Administration disability program. The information that Col. Greenblatt learned during this time with respect to the Veterans Administration's systems and processes was learned through his own research of publicly available government websites and publications.

26. During his time working with Vet Comp, Col. Greenblatt used routine software programs available to all Vet Comp employees. He was never provided with, and did not have access to, any confidential or proprietary information about Vet Comp's business. In fact, because Vet Comp's business model is built around a publicly available government benefits system, and is based in part on assistance provided to it by Col. Greenblatt, Vet Comp does not possess any

5

proprietary or trade secret information.

27. In addition to providing advice about the Veterans Administration's systems, Col. Greenblatt also worked to market Vet Comp's services to United States military veterans.

28. During the time that Col. Greenblatt provided services to Vet Comp, his full time residence remained in Pinehurst, North Carolina, but he traveled to Vet Comp's headquarters in Gainesville, Florida, during the week, having been recruited to work from there by Mr. Hill. As part of Col. Greenblatt's marketing duties he also made numerous trips across the United States to attend veterans networking events, retirement appreciation events, gun shows, and other events attended by potential Vet Comp clients.

29. Due to the nature of the services that Vet Comp provides to veterans, it has few return or repeat customers, so there is no base of existing customers to be solicited away from Vet Comp, and no confidential client list that could potentially constitute a trade secret.

30. Briefly summarized, Vet Comp's target clients are United States military veterans that need assistance navigating the Veterans Administration's disability benefits system for their determination of benefits. Vet Comp assists these veterans in making either an initial application for service connected disability benefits, or in applying for a disability rating increase. In either event, the Veterans Administration will determine the appropriate disability rating based on the information submitted, and the veteran will receive disability payments according to that rating. Because Vet Comp's purpose is to help the veteran obtain the highest possible disability rating to which he or she is entitled, once the application is processed and approved by the Veterans Administration, there is no further rating increase that the veteran should be able to obtain, and, therefore, no reason for the veteran to return to Vet Comp or any other organization providing similar services for further assistance in the future.

31. Instead, Vet Comp's business is based on marketing itself to veterans that have

recently separated from service and those that have not previously applied for disability benefits or ratings upgrades.

32. On December 31, 2016, Col. Greenblatt ceased receiving payments from Vet Comp. Upon information and belief, at or around this time, Mr. Hill formed a Puerto Rico company called VA Claim Pros, LLC ("Claim Pros"), and transferred some or all of Vet Comp's operations to Claim Pros.

33. After December 31, 2016, Col. Greenblatt received monthly payments from Claim Pros. However, the only written document or agreement Col. Greenblatt ever executed with any company relevant to this action was the Vet Comp Independent Contractor Agreement.

34. Col. Greenblatt ceased working with Mr. Hill, through any of his companies, on April 28, 2017.

35. Since his relationship with Mr. Hill's companies ended, Col. Greenblatt has not engaged in any similar business. He has, however, explored the possibility of providing veterans disability claim assistance to veterans in North Carolina and is in the process of forming a company for that purpose.

36. Within the past month, Mr. Hill has threatened to file suit against Col. and Mrs. Greenblatt to enforce the Non-Competition and Non-Solicitation Clauses of the Independent Contractor Agreement. Mr. Hill and Vet Comp have, however, failed to produce signed copies of those agreements.

37. Mr. Hill, and Vet Comp, have taken the position that the Independent Contractor Agreements prevent Col. and Mrs. Greenblatt from operating, working for, or owning any interest in any company that provides assistance to veterans anywhere in the world applying for disability benefits for the next 20 years, regardless of where that business is located or performs its services.

38. According to studies conducted by the University of North Carolina at Chapel Hill,

7

Case 1:17-cv-00669-WO-JLW   Document 1   Filed 07/21/17   Page 7 of 14

more than 736,000 veterans live in North Carolina, "representing 9.8% of the state's total population." Rebecca Tippett, Data Snapshot: North Carolina Veterans (available at http://demography.cpc.unc.edu/2013/11/11/data-snapshot-north-carolina-veterans/). Although there are no reliable statistics available about the number of North Carolina veterans that qualify for disability benefits but are not receiving them, or the number that are receiving lower disability benefits than they are entitled to, Col. Greenblatt's experience leads him to believe that North Carolina's veteran population is underserved when it comes to assistance with navigating the Veterans Administration's disability system. If enforced, the Independent Contractor Agreement would preclude both Greenblatts from providing any assistance whatsoever to these veterans for the next two decades.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment that the Non-Competition and**
**Non-Solicitation Clauses Contained in the Independent**
**Contractor Agreements are Unenforceable)**

39. The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

40. An actual controversy exists between the Parties with respect to the enforcement of the Non-Competition and Non-Solicitation Clauses of the Independent Contractor Agreements. Therefore, this Court has authority under 28 U.S.C. § 2201(a) to declare the rights of the Parties under those documents, including issuing a declaration that the Non-Competition and Non-Solicitation Clauses are null, void, and unenforceable.

41. As a threshold matter, the Florida choice of law provision in the Independent Contractor Agreement is void because the Independent Contractor Agreements were entered into in North Carolina, North Carolina has a greater interest than Florida in the outcome of this dispute, and application of Florida law in this instance would be contrary to the strong public policy of North Carolina.

8

42. Specifically, under North Carolina law, non-competition and non-solicitation covenants must be reasonable as to time and geographic scope, and reasonably related to the employer's business, in order to be enforceable. Further, under North Carolina law, the court will not rewrite the Parties' contracts to make the restrictive covenants enforceable if they are overbroad on their face.

43. The Non-Competition and Non-Solicitation Clauses are facially invalid under North Carolina law on at least two grounds:

   a. These clauses are unenforceable because the 20 year term, which applies to both clauses, is manifestly overbroad an unreasonable. No facts exist that would support enforcement of such a restrictive covenant of such extraordinary duration as to the Greenblatts.

   b. These clauses are unenforceable because they do not contain any geographic limitation.

   c. The non-solicitation clause is not enforceable because it is not limited to Vet Comp's existing customers during the time Col. Greenblatt worked with the company.

44. However, as discussed in more detail below, Florida law would potentially allow the Court to rewrite the contracts to include "reasonable" geographic and temporal restrictions to salvage the Non-Competition and Non-Solicitation Clauses.

45. Therefore, the Florida choice of law provision is void because Florida law conflicts with North Carolina's strong public policies of allowing North Carolina residents to pursue gainful employment, and because enforcement of the Florida choice of law clause would prevent Col. Greenblatt from assisting North Carolina's large and underserved disabled veteran population.

46. Alternatively, even if the Florida choice of law clause is given effect, the Non-

Competition and Non-Solicitation Clauses are invalid under Florida law for at least three reasons: 1) Vet Comp does not, upon information and belief, possess signed copies of these agreements, and it cannot enforce the agreements without a signed copy; 2) assuming signed copies exist, these agreements are not supported by any consideration; and 3) even if Vet Comp has signed copies and the agreements were supported by consideration, there is no legitimate business interest of Vet Comp that is protected by the Non-Competition and Non-Solicitation Clauses.

47. First, under Florida law, "[a] court *shall not* enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought." Fla. Stat. Ann § 542.335(1)(a) (emphasis added).

48. The Greenblatts do not possess signed copies of the Independent Contractor Agreements. Further, upon information and belief, Vet Comp also does not possess signed versions of the Independent Contractor Agreements. Col. Greenblatt requested copies of these agreements from Vet Comp on June 23, 2017, but no copies were provided to him. Vet Comp cannot enforce unsigned copies of these agreements against the Greenblatts under Florida law.

49. Second, Vet Comp did not provide any consideration to the Greenblatts to support the Independent Contractor Agreements, including the restrictive covenants therein. An examination of the Agreements shows that they are not supported by any legal consideration whatsoever. No employment or compensation is provided pursuant to those agreements, and they are premised "in consideration of the contemplated contractual relationship with Vet Comp and Pen Medical Consulting, LLC …." This consideration, if it can be called that – to possibly discus potential future employment – cannot support the twenty year world-wide restrictions placed on the Greenblatts' ability to work in the field of veterans benefits assistance.

50. Finally, under Florida law, "[a]ny restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." Fla. Stat. Ann. § 542.335(1)(b).

51. Vet Comp's business is based on assisting veterans in navigating the *public* Veterans Administration benefits system. There is no ongoing "book of business" or clientele roster to protect. And, there are no trade secrets involved in the operation of Vet Comp's business that justify the Non-Competition or Non-Solicitation Clauses.

52. Therefore, the Court should declare that under either North Carolina or Florida law the Non-Competition and Non-Solicitation Clauses are void and are not enforceable by Vet Comp.

### **ALTERNATIVE SECOND CLAIM FOR RELIEF**
(Reformation of Contract)

53. The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

54. In the event that the Court determines that the Non-Competition and Non-Solicitation Clauses may be enforced in some capacity, those clauses should be reformed to be limited to a maximum duration of six months, the Non-Competition Clause should be restricted geographically to the state of Florida, and the Non-Solicitation Clause should be restricted to existing customers of Vet Comp at the time that Col. Greenblatt ceased receiving payments from the company at the end of December 2016.

55. Pursuant to Florida Statute § 542.335(1), contracts that restrict or prohibit competition may be enforceable under Florida law "so long as such contracts are reasonable in time, area, and line of business …."

56. Section 543.335 also states that "[i]f a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant the relief reasonably necessary to protect such interest or interests." Fla. Stat. Ann. § 542.335(c).

57. In the case of restrictive covenants sought to be enforced against a former employee or independent contractor, not involving protection of trade secrets, and not associated with the sale

of all or part of a business, restraints six months or less in duration are presumed reasonable under Florida law. Fla. Stat. Ann. § 542.335(d)(2). Restraints more than two years in duration are presumed unreasonable. *Id*.

58. Further, Florida law requires consideration of the "effect of enforcement [of the restrictive covenant] upon the public health, safety, and welfare." Fla. Stat. Ann. § 542.335(g)(4).

59. Under these statutory provisions, the 20 year, world-wide restrictive covenants in the Independent Contractor Agreement, which would prevent Plaintiffs from assisting disabled veterans seeking benefits through a public system, are overbroad, overlong, and not reasonably necessary to protect the legitimate business interests, if any, of Vet Comp.

60. If the Court determines that the restrictive covenants in the Independent Contractor Agreement may be revised to be made enforceable, under Florida Statute § 542.335(c), the Court should modify those covenants to limit them as follows:

   a. The Non-Competition Covenant should be restricted to a six month term and the state of Florida.

   b. The Non-Solicitation Covenant should be restricted to a six month term, and applicable to only existing customers and employees of Vet Comp as of December 31, 2016.

WHEREFORE, Plaintiffs prays the Court as follows:

1. That the Court enter an order declaring that the Non-Competition and Non-Solicitation clauses in the Independent Contractor Agreements are void and unenforceable as to both Plaintiffs; and

2. In the alternative, that the Court enter judgment reforming the Non-Competition clause in the Independent Contractor Agreements to include reasonable time and geographic restrictions not to exceed six months and the state of Florida, and to reform the Non-Solicitation

12

clause to apply only to Vet Comp's existing customers as of December 31, 2016, and to limit the term of the Non-Solicitation clause to six months; and

      3.      That the Court award Plaintiffs their reasonable costs, including attorneys' fees, incurred in pursuing this action as allowed by law; and

      4.      For such other and further relief as the Court determines is just and proper.

This the 21st day of July, 2017.

/s/ Daniel R. Taylor, Jr.
Daniel R. Taylor, Jr.
N.C. Bar No. 7358
Dustin T. Greene
N.C. Bar No. 38193
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 607-7300
Facsimile (336) 607-7500
*Attorneys for Plaintiffs*

VERIFICATION

Scott Greenblatt and Tammy Greenblatt being first duly sworn, depose and say:

That they have read the forgoing Complaint against Vet Comp & Pen Medical Consulting, LLC in the District Court for the Middle District of North Carolina, and know the contents thereof; that the same is true of their own knowledge, except as to those matters therein alleged upon information and belief, and as to those matters, they believe them to be true.

_____
Scott Greenblatt

_____
Tammy Greenblatt

SWORN TO AND SUBSCRIBED before me this ___ day of July, 2017.

_____
Notary Public (Mary S. Anderson)

My Commission Expires: 02-02-2021

*[Notary Seal: MARY S. ANDERSON, NOTARY PUBLIC, ROCKINGHAM COUNTY, NC, My Comm. Expires February 2, 2021]*

13